IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| BLACK & DECKER (US), INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. _____ |
| ) | |
| TIMOTHY C. SMITH ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff, Black & Decker (US), Inc. ("B&D"), by and through counsel, files this Complaint for Injunctive Relief and Damages against Defendant, Timothy C. Smith ("Smith"), and would show as follows:

**PARTIES**

1. B&D is a Maryland corporation authorized to do business in the State of Tennessee and maintains its principal place of business in Towson, Maryland.

2. Upon information and belief, Defendant Smith is an adult resident of the State of Tennessee, residing at 24 Glen Dillion Drive, Jackson, Tennessee, 38305.

3. Smith is a former employee of B&D, most recently at a facility in Jackson, Tennessee.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§1331, 1332, and 1367 as this action arises under the laws of the United States, specifically the Computer

Fraud and Abuse Act, 18 U.S.C. §1030, *et seq.* ("CFAA"), and there is diversity of citizenship between the parties hereto with the amount in controversy exceeding the jurisdictional amount of $75,000. This Court may accept supplemental jurisdiction of the attendant state law claims stated herein as those claims are related to the federal claim and form part of the same case or controversy.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) and/or (b)(2).

## FACTUAL BACKGROUND

6. After being hired in June 2004, Smith was employed by different divisions of B&D, holding various engineering positions. During his employment, Smith had access to a wide variety of written and electronic B&D product information. In June 2006, Smith began working for Michael Wilson ("Wilson"), Director of Engineering for the Pressure Washer Design Group, as a project engineer working in Wilson's group in Jackson, Tennessee. *See* Exhibit 1, ¶ 3.

7. In July or August of 2007, B&D was informed by one of its customers that it would not be awarded a new contract to supply pressure washers for the year 2008. Rather a division of Techtronic Industries, Co., Ltd. ("TTI"), a major competitor of B&D and/or a related TTI company, was awarded the contract. TTI had not previously been engaged in large scale manufacturing of pressure washers in the United States. See Exhibit 1, ¶ 4.

8. Shortly thereafter, Wilson and most of the engineers working under him received calls from Chuck Irwin, a recruiter for PowerSearch, asking them to interview for jobs working on pressure washers with a division of TTI. Irwin contacted Smith on or about September 21, 2007. From September 21, 2007, forward, Irwin and TTI employees contacted Smith numerous times about interviewing at TTI. In fact, on October 8, 2007, Smith took a day off work from

2

B&D and interviewed at TTI in South Carolina. Smith accepted a position with TTI on or about October 12, 2007. See Exhibit 1, ¶ 6.

9. Wilson confronted Smith on Monday, October 15, 2007, about whether Smith intended to leave B&D to go to TTI. In that conversation, Smith indicated that he had accepted a job with TTI to begin working in South Carolina on October 22, 2007, and intended to resign on October 17, 2007. (His yahoo email account indicates that his start date was to be September 29, 2007.) Due to the sensitive nature of the engineering data with which Smith worked at B&D, Wilson requested and received Smith's immediate resignation. See Exhibit 1, ¶ 6. As is B&D's regular practice, Smith was asked to return immediately all B&D property and to sign a Termination Agreement. See Exhibit 1(A). As part of this Termination Agreement, Smith promised:

   1. I do not have any written confidential information in my possession belonging to Black & Decker or to a third party with whom Black & Decker has a contractual obligation. (Examples of "confidential information" are engineering drawings, blueprints, designs, test data, market research reports, business plans, or other documents of a confidential, trade secret, or proprietary nature.)

   2. I do not have any other property belonging to Black & Decker, in my possession.

   3. I will not disclose to others any confidential information, trade secret, or proprietary data which I learned or had access to during the course of my employment with Black & Decker.

   4. I will abide by the terms of any employment agreement I made with Black & Decker, in so far as my obligations under any such agreement continue after the termination of my employment.

See Exhibit 1(A).

10. Smith did not return any confidential or other B&D property at the time he left the Company. See Exhibit 1, ¶ 7.

11. On January 6, 2005, when Smith was employed with DeVILBISS Air Power Company, a related corporate entity to B&D, Smith signed a Confidentiality Agreement which encompasses DeVILBISS and its "parents, subsidiaries, successors and assignees," *i.e.* B&D. That agreement provides as follows:

In consideration of my employment and the compensation to be paid to me, I agree that my employment is made upon the following:

> A) I shall hold in confidence all information, including but not limited to, ideas, inventions and improvements, whether or not patentable, and business, manufacturing, and marketing results and plans (hereinafter called "Information"), which I conceive or acquire as a result of my employment concerning the business of the Company. I shall disclose information only to officers, employees, and authorized agents of the Company, in the protection and advancement of the Company's interest. All information shall belong to and be the exclusive property of the Company without further compensation.
>
> B) I shall disclose to the Company all information conceived or acquired as a result of my employment and I will at any and all times hereafter, whenever requested by the Corporation, execute the deliver all documents which, in the opinion of the Company, are necessary or proper to obtain letters of patent of the Company ownership of all ideas, inventions and improvements and all letters patent thereon. This agreement shall be deemed an assignment thereof to the Company.

Upon termination of my employment for any reason, I agree to and shall promptly deliver to the Company all written information which is in my possession or under my care, custody or control.

See Exhibit 1, ¶ 8 & (B).

12. On July 18, 2007, Smith also signed an Employee Access Agreement. The Computer Access Agreement states, in relevant part, as follows:

> I will maintain the confidentiality of all information of a confidential, proprietary or other legally sensitive nature. I will not send, share or publish such information on the Internet without prior approval and without first encrypting or protecting as required by policy.
>     * * *

> I will not use Black & Decker's systems … in a way that might be legally or ethically inappropriate,. . . .
>
> \*\*\*
>
> I realize that regardless of monitoring, audit and management actions that Black and Decker might take, that ultimately I am responsible for my own actions and for compliance with policy and for my professional behavior.

See Exhibit 1, ¶ 9 & (C).

13. Additionally, B&D has a Code of Ethics by which its employees are to conduct themselves and as recently as the Spring of 2007, all employees, including Smith, were given a copy of B&D's "Doing What's Right," an employees' guide to B&D's Code of Ethics. See Exhibit 1, ¶ 9 & (D) p. 2. Specifically included in "Doing What's Right" are examples related to sharing confidential information with third parties. This pamphlet expressly indicates that such documents as "blueprints" cannot be shared with a potential vendor who is seeking to bid for B&D business unless and until the vendor has signed a confidentiality agreement. See Exhibit 1, ¶ 9 & (D) p. 28.

14. After Smith left his employment with B&D, Wilson became concerned that Smith might have taken confidential documents. Wilson investigated with the assistance of Talitha Brooks ("Brooks"), IT Site Support Manager, and others to determine if there were indications of improper or unauthorized copying of computer files by Smith. See Exhibits 1, ¶ 10; 4 ¶s 3-8. B&D also engaged a computer consultant, Phillip Rodokanakis ("Rodokanakis") of U.S. Data Forensics, for further study under secure conditions. See Exhibit 2.

15. The investigation showed that on September 28, 2007, shortly after being contacted by Irwin regarding potential employment with TTI, Smith copied a large volume of confidential documents from B&D secure servers into a file Smith created under his own name on B&D's "H" drive, a shared drive within the B&D facility. The documents Smith copied to his file include a substantial amount of B&D's confidential and proprietary information about

B&D pressure washers and other B&D products or tools existing in various stages of pre-market development.  At that time Smith would have had no business reason to access for his then-current job for B&D.  Smith would have had no business reason to place most of these documents in a file on the "H" drive under his name. See Exhibits 1, ¶s 10-13; 2; and 4, ¶s 4, 7-8.

16. B&D's computer consultant determined that not only had Smith copied numerous confidential trade secret and proprietary documents to the "H" drive and placed them in his named file, but, he also accessed a substantial amount of confidential information on October 14, 2007 before he resigned.  The data he accessed included material relating to pump strategies on B&D pressure washers; a document relating to crankshaft issues; documents listing DeWalt engine parts and pricing relating to B&D's Chinese engine supplier; photos, CAD drawings and specifications on two confidential projects on which Smith was working ; a suite of photographs of B&D prototypes; panel charts showing milestones and market research; test results on products; photographs of products in development; copies of prototypes for new business; and pictures and files on new products and features in development. See Exhibits 1, ¶ 12; 2; and 4, ¶ 4.

17. On October 14, 2007 Smith also attached a large external storage device and opened some of these documents on the external storage device while it was attached to his B&D office desktop computer.  These documents include confidential materials from B&D marketing, containing marketing research, specifications, and retail price projections for products B&D intends to launch in 2008; a folder containing a number of files on B&D DeWalt Engine, including parts lists, costing analysis, and approved suppliers; costing spreadsheets for a new

product Smith was helping design; and notes of meetings held with the engineering staff about three new products which were being developed for launch in 2008.  See Exhibit 2.

18. Additionally, on October 14, 2007, among other dates, Smith sent documents from his B&D email address to his personal Yahoo email address, one of which was an email he received from a B&D co-worker which related to a B&D product with attached part numbers and pictures. See Exhibit 2.

19. All the information accessed and copied and/or transmitted by Smith was confidential and proprietary to B&D and would be helpful to a competitor who was trying to sell both consumer and commercial power washers and other products including compressors.  See Exhibits 1, ¶ 13; 4, ¶ 4.

20. Essentially, it appears that Smith copied the documents to the "H" drive, accessed them for several minutes each and moved some or all of them to the external storage device.  He opened a few of the documents on the external storage device to ensure he had what he wanted, and took the external storage device containing these trade secrets and proprietary documents with him when he left the B&D premises.

21. The research and development value of this material is more than $1,000,000.00. See Exhibit 1, ¶ 14.

22. On October 22, 2007, pursuant to B&D's corporate practice, Smith was sent a letter reminding him of his obligations regarding confidential information of B&D.  See Exhibit 3.

23. Information acquired by Smith, as described above, constitutes a legitimate protectable business interest of B&D, including trade secrets and/or confidential and proprietary

business information, that if divulged to a competitor, such as TTI, Smith's present employer, would cause irreparable harm to B&D.

24. As evidenced by the information and timeframes outlined above, Smith began to actively develop a plan to fraudulently obtain B&D confidential and proprietary documents after being contacted about potential employment with TTI and prior to his intended notice to B&D of his plan to leave its employment but after he had already accepted a position with TTI. Additionally, the manner Smith used to obtain these confidential documents indicates that he knew his conduct was wrongful.

25. The foregoing actions by Smith threaten and will cause great and irreparable injury to B&D in that such conduct will result in the breach of B&D's contractual and business rights, the misappropriation and disclosure of confidential and proprietary information and/or trade secrets, and cause economic injury which cannot readily be ascertained or calculated. Unless immediate injunctive relief as prayed for herein is granted, the violations of the CFAA, the Tennessee Uniform Trade Practices Act ("TUTPA"), and the Tennessee Personal and Commercial Computer Act ("TPCCA"), as well as the breach of duty of loyalty, breach of contract, misappropriation of confidential and/or proprietary information, and unfair competition and unfair trade practice will have been completed, rendering ineffectual a final judgment. By reason thereof, B&D has no adequate remedy at law for such acts and threatened acts.

## COUNT I
## COMPUTER FRAUD AND ABUSE ACT

26. B&D hereby restates and incorporates by reference the allegations set forth in Paragraphs 1 through 25 as if fully and completely restated herein.

27. Without authority and/or by exceeding authorization, Smith has wrongfully, intentionally, knowingly, and/or with intent to defraud accessed B&D's protected computers

and/or computer systems and obtained information from such computers and/or caused the transmission of information in interstate communication. Said information accessed and obtained and/or transmitted constitutes trade secrets and confidential and proprietary business information of B&D, which information has value to B&D and to its competitors, and the accessing and copying of which has resulted and will continue to result in loss and damage to B&D far in excess of $5,000 in value. In addition, the attendant costs of conducting the damage assessment and restoring the data, program, systems or information to its condition prior to Smith's actions exceeds $5,000.00. 18 U.S.C. §§1030 (a)(2)(C), (a)(4), and (a)(5)(A). B&D's computers used by Smith constitute "protected computers" under 18 U.S.C. §1030(e) and were at all pertinent times the property of B&D.

28. Smith never had any authority at any time to access, obtain, use, transmit, communicate, deliver, divulge, delete or otherwise manipulate any of the data contained in B&D's computers, whether directly or indirectly though others, except in connection with his efforts as an employee acting on behalf of and for the benefit of B&D. See Exhibit 1, ¶ 15. Smith was specifically prohibited, both by contract and operation of law, from using, divulging or accessing B&D data and/or computers for the benefit of himself or of any B&D competitor.

29. The actions of Smith in doing so are in violation of the CFAA, 18 U.S.C. §1030 et seq. Furthermore, pursuant to 18 U.S.C. §1030(g), B&D is entitled to injunctive and/or other equitable relief as well as compensatory damages and other damages.

30. As a direct and proximate result of Smith's conduct in violation of CFAA, B&D has suffered and will continue to suffer damages which are not fully ascertainable at this time and which fall within the definitions set forth in 18 U.S.C. §1030 (e), but which B&D will show more specifically at trial.

31.     As a consequent of Smith's wrongful conduct, he has derived illicit value related to the information copied which he must disgorge and return and restore to B&D all information wrongfully obtained.

32.     The conduct at issue constitutes a violation of CFAA and will continue unless enjoined by this Court, as B&D is without adequate remedy at law and is threatened with irreparable loss, injury, and damage unless the Court grants the equitable relief requested.

<u>**COURT 2**</u>
<u>**TENNESSEE UNIFORM TRADE SECRETS ACT**</u>

33.     B&D hereby restates and incorporates by reference the allegations set forth in Paragraphs 1 through 32 as if fully and completely restated herein.

34.     Smith's conduct of accessing, copying, and removing B&D's confidential information violates TUTSA, T.C.A. §47-25-1701, et seq. As outlined herein, the B&D information that Smith has taken comports with the definition of "trade secrets" under the TUTSA, specifically ". . . information, without regard to form, including but not limited to, technical and non technical or financial data, a formula, pattern, compilation, program, device, method, technique, process or plan" that "derives individual economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use" and "is the subject of reasonable efforts to maintain its secrecy." Id.

35.     B&D's trade secret information has individual economic value as it is kept in specific servers on B&D's computer systems where access is allowed only to those with a "need to know" and is password protected. B&D's trade secret information is maintained confidentially so third parties do not have access to it and therefore cannot use it for economic

gain. Smith was well aware of the need for confidentiality while employed at B&D and he used improper means to obtain said information. See Exhibit 1 (A), (B) & (C).

36. Section 47-25-1703 provides that "actual or threatened" misappropriation may be enjoined to deter the willful and malicious misappropriation and/or to eliminate the commercial advantage that otherwise would be derived from the misappropriation, among others. Furthermore, B&D can recover damages for the actual loss caused by misappropriation and the unjust enrichment caused by it that is not otherwise taken into account in computing the actual loss, as well as exemplary damages for willful and malicious conduct, among others. Furthermore, B&D may recover its attorney's fees as the prevailing party. T.C.A. §47-25-1701, et seq.

37. As a direct and proximate result of Smith's conduct in violation of TUTSA, B&D has suffered and will continue to suffer damages which are not fully ascertainable at this time, but which B&D will show more specifically at trial.

38. As a consequent of Smith's wrongful conduct, he has derived illicit value related to the information copied which he must disgorge and return and restore to B&D all information wrongfully obtained.

39. The conduct at issue constitutes a violation of TUTSA and will continue unless enjoyed by this Court, as B&D is without adequate remedy at law and is threatened with irreparable loss, injury, and damage unless the Court grants the equitable relief requested.

### COUNT 3
### TENNESSEE PERSONAL AND COMMERCIAL COMPUTER ACT OF 2003

40. B&D hereby restates and incorporates by reference the allegations set forth in Paragraphs 1 through 37 as if fully and completely restated herein.

41. Smith's conduct of accessing, copying, and removing B&D's confidential information violates TPCCA, T.C.A. §39-14-601, et seq. Smith knowingly accessed B&D's computer systems for the purpose of "…obtaining …property …for [himself] or another by means of false or fraudulent pretenses [or] representations…." T.C.A. §39-14-602(a)(1). The property he obtained is economically valuable to B&D and to its competitors, such as Smith's present employer TTI.

42. Smith's conduct of intentionally making an unauthorized copy of B&D computer data residing in, communicated by, and/or produced by a computer or computer network constitutes a separate and distinct violation of TPCCA, T.C.A. § 39-14-602(b)(5).

43. As a direct and proximate result of Smith's conduct in violation of TPCCA, B&D has suffered and will continue to suffer damages which are not fully ascertainable at this time, but which B&D will show more specifically at trial, but which include "…any damages sustained and the costs of the civil action…" and attorney's fees, as allowed by TPCCA. T.C.A. §39-14-604(a).

## COUNT 4
## BREACH OF CONTRACT

44. B&D hereby restates and incorporates by reference the allegations set forth in Paragraphs 1 through 43 as if fully and completely restated herein.

45. The conduct of Smith as set forth above is in direct violation of the Confidentiality Agreement, the Employee Access Agreement, and the Termination Agreement he signed with B&D.

46. B&D has suffered and will continue to suffer damages as a result of Smith's breach of these Agreements.

47. The continued breach of these Agreements by Smith will result in irreparable harm to B&D including, but not limited to, substantial loss of revenue in amounts presently incalculable, loss of profits in amounts presently incalculable, loss of good will, loss of business relations with existing and future business prospects, and loss of competitive advantage, opportunity and/or expectancy, all for which B&D has no adequate remedy at law. B&D is entitled to injunctive relief to enjoin further breach of these Agreements.

48. B&D is also entitled to recover such actual and consequential damages as may be provable upon the trial of this cause.

### COUNT 5
### BREACH OF DUTY OF LOYALTY AND/OR FIDUCIARY DUTY

49. B&D hereby restates and incorporates by reference the allegations set forth in Paragraphs 1 through 49 as if fully and completely restated herein.

50. Smith has violated the common law duty of loyalty arising under his employment relationship with B&D by acting in a manner adverse to the interest of his employer, B&D, while still employed by B&D.

51. As a consequence of the foregoing, B&D has suffered and, absent injunctive relief, will continue to suffer financial harm, which is presently incalculable, together with other irreparable harm and loss and in addition to actual, compensatory, and punitive damages as proved at trial.

### COUNT 6
### MISAPPROPRIATION AND/OR MISUSE OF CONFIDENTIAL
### AND PROPRIETARY INFORMATION

52. B&D hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 51 as if fully and completely restated herein.

53. Smith has misappropriated and/or misused highly confidential and proprietary business information, including but not limited to, the items stated herein, whether or not such items constitute a trade secret.

54. Such information derives economic value from not being generally known to and not being readily available by proper means to other persons who can obtain economic value from its disclosure or use. Such information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Such information, therefore, constitutes protectable confidential and proprietary information within the meaning of Tennessee's common law.

55. As a consequence of Smith's misappropriation and/or misuse of highly confidential and proprietary business information, B&D has suffered and will continue to suffer damages in addition to being irreparably harmed.

## COUNT 7

## UNFAIR COMPETITION AND UNFAIR TRADE PRACTICE

56. B&D hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully and completely restated herein.

57. Smith's conduct as described herein constitutes an unfair method of competition and an unfair trade practice.

58. As a consequence of the foregoing, B&D has suffered and, absent injunctive relief, will continue to suffer financial harm, which is presently incalculable, together with other irreparable harm and loss and monetary damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, having set forth its Complaint against Defendant herein, prays:

1. That upon hearing, a temporary restraining order and/or preliminary and permanent injunction issue, enjoining Smith, directly or indirectly, and whether alone or in any capacity whatsoever, including, but not limited to, his employment with TTI, from:

   (a) disclosing, divulging, communicating, using or giving another company or person, specifically but not limited to TTI, to use, any of B&D's information, whether confidential and proprietary or trade secret, which he copied and removed from B&D's computer system before he left its employment on October 15, 2007 or otherwise in his possession, custody or control;

   (b) mandating the return and restoration to B&D of any and all B&D information and data of any nature still in his possession regardless of whether he copied and removed it from B&D's computer system before he left its employment on October 15, 2007 or over which he has possession, custody or control;

   (c) enjoining him from altering or destroying any evidence, including but not limited to paper "hard copy" and/or electronic data or documents on any personal or other computer or on any other external storage device that was attached to his personal or other computer or any computer at B&D while he was employed there or which said storage device was later attached to at any time from his date of resignation with B&D to the present, that is relevant to any allegation or claim asserted in this lawsuit;

   (d) directing him, within twenty-four (24) hours of receiving this Court's Order or notice of the existence of this Court's Order, to produce to Plaintiff's computer forensic expert, Phillip A. Rodokanakis of U.S. Data Forensics, LLC, at 4520 East West Highway, Suite 620, Bethesda, Maryland 20814 using overnight, trackable courier (*e.g.* FDX or UPS), any and all computer or other information-storing medium, including but not limited to any external storage devices, within his possession, custody or control for the purpose of imaging and examination. Plaintiff shall promptly reimburse Smith for this cost of shipping and insurance thereon after presentation of a receipt of payment;

   (e) directing him not to use or disclose any B&D trade secret, proprietary, and/or confidential information to anyone until further order of this Court;

      (f)    requiring him, within twenty-four (24) hours of receiving this Court's Order or notice of the existence of this Court's Order, to provide sworn written testimony to Plaintiff's counsel outlining the names of any and all third parties to whom he has provided any B&D information regardless of whatever format used or any computer or external storage drive on which B&D information was contained, including but not limited to the information accessed and obtained and/or transmitted from B&D's computer system before he left his employment with B&D on October 15, 2007, or otherwise in his possession, custody or control, the specific information disclosed or transmitted, the date he provided such information to said third party, the specific person(s) to whom such information was provided, and the address and other contact information of said third party in order that B&D may take appropriate steps to recover such information promptly.

    2.    Enter an Order allowing B&D to engage in expedited discovery which is necessary in order for B&D to prepare for a hearing on preliminary injunctive relief related to the claims made herein with such discovery to include the service upon Smith and TTI of a specified number of Interrogatories and Request for Production of Documents or Subpoenas Duces Tecum, as appropriate, to be answered or responded to within five (5) days of service and allowing the taking of depositions of Smith and appropriate TTI representatives within seven (7) days of service.

    3.    Enter Judgment in favor of B&D allowing recovery from Defendant of B&D's actual and consequential damages in amounts to be proven at trial in this cause;

    4.    Enter Judgment in favor of B&D allowing recovery from Defendant of punitive and/or exemplary damages in an amount to be determined appropriate by the Court;

    5.    Enter Judgment in favor of B&D allowing recovery from Defendant of B&D's attorneys' fees incurred herein, together with its other expenses of litigation and costs;

6.     Enter Judgment in favor of B&D allowing recovery from Defendant of B&D costs, and such other legal and equitable and further relief as the Court deems just and proper.

THIS IS PLAINTIFF'S FIRST APPLICATION FOR EXTRAORDINARY RELIEF.

Respectfully submitted,

s/ N. Victoria Holladay
N. VICTORIA HOLLADAY (TN No. 18487)
DELAINE R. SMITH (TN No. 15027)

FORD & HARRISON, LLP
795 Ridge Lake Blvd., Suite 300
Memphis, Tennessee 38120
Telephone:   (901) 291-1500
Telefax:     (901) 291-1501

COUNSEL FOR PLAINTIFF

MEMPHIS:177601.1